IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUGAR RAY FRANKLIN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:14-cv-3569-G-BN |
| | § | |
| WILLIAM STEPHENS, Director | § | |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Sugar Ray Franklin, a Texas inmate, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained below, the application should be denied.

**Background**

Franklin is currently incarcerated pursuant to a 2012 conviction for aggravated assault with a deadly weapon, for which he receive a five-year sentence. *See State v. Franklin*, No. F11-55114-T (283d Jud. Dist. Ct., Dallas Cnty., Tex.). His conviction and sentence were affirmed on direct appeal. *See Franklin v. State*, 402 S.W.3d 894 (Tex. App. – Dallas 2013, no pet.). And the Texas Court of Criminal Appeals ("CCA") denied his state habeas application without written order on the findings of the trial court, made without a live hearing. *See Ex parte Franklin*, WR-8,108-05 (Tex. Crim. App. Sept. 17, 2014) [Dkt. No. 10-13]; *see also* Dkt. No. 10-17 at 4-14 (trial court findings of

fact and conclusions of law and counsel affidavits).

The facts underlying Franklin's conviction are taken from his brief on appeal:

Both Christopher Thompson and [Franklin] had been working together for the last five months at a landfill through a temp service called Pacesetters. Under the terms of the contract, the same five guys would work at the site everyday. If one of the guys did not show up, they would pick another guy to take his place. On May 6, 2011, Thompson and [Franklin] got into an argument about who should pick the replacement person for that day. Thompson and [Franklin] presented differing versions of the events that took place following that argument.

Thompson testified that after [Franklin] pushed him, he walked away and suggested that they go outside to talk about it. However, as he was walking away, [Franklin] pulled a double-bladed knife on him and stated, "I kill you, mother-fucker." Another co-worker stepped in between the two and Thompson ran out the door to his car where he retrieved a hammer. The owner of the business stopped him from going back in and told him to call 911. Thompson did not see [Franklin] after he ran out the door.

[Franklin] testified that he got into the argument with Thompson when he was standing at the window talking to the dispatcher and Thompson pushed him to the side and they started mouthing back and forth at each other. Thompson then invited him outside like he wanted to fight. They both started walking towards the door and when Thompson started going to his car, [Franklin] asked another worker to take him home so he could get his van. [Franklin] testified that he wanted to get his van because they needed nine workers that day and all nine would not have fit in Thompson's car. [Franklin] denied raising a knife to Thompson or threatening to kill him; he denied even having a knife with him that day. When he came back with the van, the police were there and arrested him.

Both the State and the defense presented additional testimony from co-workers who were present at the time of the argument. The trial court resolved the conflicts in the testimony against [Franklin].

Dkt. No. 10-5 at 5-6 (record citations omitted).

In his timely-filed federal habeas application, Franklin asserts the same claims that he raised in the state habeas proceedings – (1) that the trial court lacked subject matter jurisdiction because the indictment was defective; (2) that he was denied

appointment of counsel; (3) that Dallas County violated the separation of powers doctrine; (4) that his trial counsel provided constitutionally ineffective assistance; and (5) that his appellate counsel provided constitutionally ineffective assistance. *See* Dkt. No. 3.

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the

state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

-4-

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court

explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

## Analysis

### I.    Trial Court's Jurisdiction

Franklin first claims that deficiencies in the indictment deprived the trial court of jurisdiction. *See* Dkt. No. 3 at 6.

"The sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction." *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) (citing *Branch v. Estelle*, 631 F.2d 1229 (5th Cir. 1980)); *accord Alexander v. McCotter*, 775 F.2d 595, 598 (1985).

> For an indictment to be "fatally defective," no circumstances can exist under which a valid conviction could result from facts provable under the indictment. *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988).

> State law determines whether an indictment is sufficient to vest jurisdiction in the state trial court. *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994). Under Texas law, "indictments charging a person with

> committing an offense, once presented, invoke the jurisdiction of the trial court and jurisdiction is no longer contingent on whether the indictment contains defects of form or substance." *Teal v. State*, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007). [Even the] "failure to allege an element of an offense in an indictment or information is a defect of substance," as opposed to one of jurisdiction. *Studer v. State*, 799 S.W.2d 263, 268 (Tex. Crim. App.1990). As acknowledged in *Studer*, if omitting an element from an indictment is a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element. *Id.*

*Fields v. Thaler*, Civ. A. No. H-11-0515, 2012 WL 176440, at *6-*7 (S.D. Tex. Jan. 20, 2012).

Here, the state habeas court found this claim to be without merit. *See* Dkt. No. 10-17 at 5. And the CCA denied Franklin's state habeas petition without written order. Accordingly, "the highest state court has determined, at least implicitly, that the indictment is sufficient, so [Franklin's] claim is thus not cognizable under § 2254." *Odham v. Scott*, 56 F.3d 1384, 1995 WL 337647, at *2 (5th Cir. 1995) (per curiam) (citing *Alexander*, 775 F.2d at 599; *McKay*, 12 F.3d at 68).

## II.   Appointment of Counsel

Franklin next claims that he, an indigent person, "was required to face criminal trial proceeding without appointment of counsel." Dkt. No. 3 at 6.

The state habeas court, after obtaining the affidavit of Scott Walker, the attorney appointed to represent Franklin as trial counsel on May 9, 2011, *see* Dkt. No. 10-17 at 7-9, rejected this claim as without merit, *see id.* at 5. This Court's review of the state court record in no way supports Franklin's contention that he was denied counsel during his trial. That review instead supports the state habeas court's

conclusion that the claim lacks merit.

As such, Franklin has failed to show that the state court's decision as to this claim constitutes an unreasonable determination of the facts in light of the evidence before the state court. *See* 28 U.S.C. § 2254(d)(2). This claim should therefore be denied.

### III.    Separation of Powers

Franklin's third claim is that the Parole Division of the Texas Department of Criminal Justice interfered with the state judicial branch by (1) designating who his court-appointed attorney would be; (2) "blending parole warrant along with criminal charges to keep charges from being dismissing"; (3) "using hearings as a form of entrapment"; and (4) "using other parolees warrants with similar cases to prolong incarceration." Dkt. No. 3 at 7.

The state habeas court also found this claim to be without merit. See Dkt. No. 10-17 at 5. And this Court should reject this third habeas claim as well, as it is conclusory. That is, Franklin has offered no support for this claim other than his own allegations. *See* Dkt. Nos. 3 at 7 & 14 at 5. The claim should therefore also be denied, as conclusory allegations are insufficient to justify habeas relief. *See, e.g.*, *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("conclusory allegations ... do not raise a constitutional issue in a federal habeas proceeding").

### IV.    Trial and Appellate Counsel

Franklin also cites numerous reasons why he believes that his trial and appellate counsel provided constitutionally ineffective assistance. *See* Dkt. No. 3 at 7

& 11. After obtaining sworn affidavits from both attorneys, *see* Dkt. No. 10-17 at 7-13, the state habeas court rejected Franklin's Sixth Amendment claims, *see id.* at 5-6.

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("the proper standard for evaluating [a] claim that appellate counsel was ineffective ... is that enunciated in *Strickland*" (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986))).

Under *Strickland*, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689)).

"A conscious and informed decision on trial tactics and strategy cannot be the

basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover,"[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting

*Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review Petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.

As to his trial counsel, Mr. Walker, Franklin first contends that counsel was ineffective because he failed to advocate in his defense. *See* Dkt. No. 3 at 7. But Walker's testimony and the state court record belie this broad assertion.

Franklin next contends that counsel was ineffective because he tampered with and fabricated evidence. *See* Dkt. No. 3 at 7. But Walker testified in the state habeas proceedings that he did not. *See* Dkt. No. 10-17 at 8 ("Mr. Franklin alleges that I tampered with and fabricated physical evidence by admitting a search warrant and a prosecution report into evidence. I did offer the evidence, but I did not tamper with it. The evidence showed inconsistencies in the State witnesses' stories. This was legitimate trial strategy.").

Franklin next contends that counsel was ineffective because he failed to call alibi witnesses. *See* Dkt. No. 3 at 7. But Walker testified in the state habeas proceedings that, of the two witnesses that a court-appointed investigator located, one did testify for Franklin, and one did not because his testimony favored the prosecution. *See* Dkt. No. 10-17 at 8.

Franklin next contends that counsel was ineffective because he failed to read pre-trial discovery. *See* Dkt. No. 3 at 7. But Walker testified in the state habeas proceedings that he "reviewed all discovery prior to trial." Dkt. No. 10-17 at 8.

Franklin next contends that counsel was ineffective because he failed to investigate the indictment. *See* Dkt. No. 3 at 7. But Walker testified in the state habeas proceedings that he "discussed the indictment with Mr. Franklin long before trial, and he certainly understood what he was charged with." Dkt. No. 10-17 at 7-8.

Franklin next contends that counsel was ineffective because he failed to object to untrue testimony. *See* Dkt. No. 3 at 7. But, in the state habeas proceedings, Walker explained, through his sworn affidavit, his rationale for choosing not to cross-examine certain witnesses. *See* Dkt. No. 10-17 at 8-9 ("We had the opportunity to cross-examine all of the State's witnesses. I have tried many felony cases and cross-examination is one of my strong points. I have never chosen to *not* cross-examine a witness without sound trial strategy being involved. The only reasons for choosing to *not* question State's witnesses that have ever caused me to do so, are when the witnesses' direct testimony did not help the State's case, and when I knew there was other testimony that could be elicited from the witnesses that would be harmful to our case. As I mentioned earlier, my investigator had interviewed Emmit Bryant, and we knew what he would say if certain questions were asked. If I did not cross-examine him, it was because I knew he had more to say that would hurt our case. Detective Crouch's testimony was not particularly harmful to our case and I did not see any benefit in asking him any further questions." (emphasis in original)).

Franklin next contends that counsel was ineffective because counsel denied him the right to confront witnesses against him. *See* Dkt. No. 3 at 7. But Walker's testimony from the state habeas proceedings excerpted immediately above belies this Confrontation Clause claim.

Franklin's last contention is that counsel was ineffective because he was hostile to him. See Dkt. No. 3 at 7. But Walker testified in the state habeas proceedings that he "was never hostile towards Mr. Franklin during trial." Dkt. No. 10-17 at 9.

Particularly in light of Walker's testimony, Franklin has not shown "that the state habeas court's conclusion" – that trial counsel's testimony was credible and that the ineffective-assistance claims against trial counsel should be denied – "amounted to an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)).

Turning to the claims against his appellate counsel, Kathleen A. Walsh, Franklin claims that she did not file an appellate brief meeting the minimum requirements of *Anders v. California*, 386 U.S. 738 (1966), nor did she raise issues that would result in his conviction. *See* Dkt. No. 3 at 11. He further contends that Walsh failed to forward sufficient documents to the appellate court and also attempted to prevent his state habeas petition from being heard. *See id.*

Walsh also provided the state habeas court with a sworn affidavit, in which she pointed out that, indeed, an *Anders* brief was not filed, because she chose instead to file a brief arguing that the evidence was "insufficient to support the trial court's order for [Franklin] to pay $244 court costs." Dkt. No. 10-17 at 10-11 ("In my professional opinion, there were no other viable issues which could be raised on appeal. Although the issue raised in the brief would not result in a reversal and new trial for Mr. Franklin, I made a strategic decision to raise the costs issue, as opposed to filing an *Anders* brief, because I believed it was in Mr. Franklin's best interest to preserve the issue for review since the manner in which costs were being assessed was currently an issue pending before the Court of Criminal Appeals."); *cf. Clark v. Collins*, 19 F.3d 959,

966 (5th Cir. 1994) ("Failure to raise meritless [claims] is not ineffective lawyering; it is the very opposite.").

Franklin's other claims against Ms. Walsh are both not supported by the state court record and undercut by her testimony. *See* Dkt. No. 10-17 at 12-13.

Accordingly, Franklin has not shown "that the state habeas court's conclusion" – that appellate counsel's testimony was credible and that the ineffective-assistance claims against her should be denied – "amounted to an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza*, 738 F.3d at 680.

## Recommendation

Franklin's application for writ of habeas corpus should be denied. And the Court should deny as moot his pending "motion to compel the release" of this recommendation [Dkt. No. 15] and motion for a protective order [Dkt. No. 16], which chiefly concerns the frivolous separation-of-powers claim discussed above.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: March 31, 2016

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE